Commonwealth *v.* Joyner, Appellant.

Argued January 14, 1970.  Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Sanford Kahn,* for appellant.

*James D. Crawford,* Deputy District Attorney, with him *Jeffrey A. Brodkin,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 7, 1971: This is an appeal from the order of the Court of Common Pleas, Trial Division, Criminal Section, of

Philadelphia, denying appellant's motion for new trial nunc pro tunc. Appellant was tried on an indictment charging murder before the Honorable VINCENT A. CARROLL and a jury on March 6-8, 1958. He was found guilty of murder in the first degree, and on March 14, 1958, was sentenced to life imprisonment.

During the course of the trial, Joyner's confession to the police was admitted into evidence over objection. Appellant filed a petition for writ of habeas corpus in 1965, alleging that his confession was involuntary. Pursuant to the dictates of *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774 (1964), a hearing was held. The petition was denied and appellant appealed *pro se* to this court. We affirmed. *Com. ex rel. Joyner v. Brierley*, 429 Pa. 156, 239 A. 2d 434 (1968).

Appellant subsequently, on December 9, 1968, filed a petition under the Post Conviction Hearing Act and was granted leave to file post-trial motions nunc pro tunc.[1] These motions were denied on July 3, 1969, by Judge MEADE; the instant appeal followed.

---

[1] The record in this case leaves much to be desired. In addition to the fact that the original trial record disappeared some time between 1965 and 1967 (see *Com. ex rel. Joyner v. Brierley*, supra, at Footnote 1), it is not at all clear what transpired between the filing of the Post Conviction Hearing Act petition and its grant. The petition alleged a denial of the right to appeal in violation of *Douglas v. California*, 372 U.S. 353, 83 S. Ct. 814 (1963). There was also some language to the effect that Joyner did not appeal because of fear of the death penalty if he gained a retrial. The *Douglas* claim did seem to have been waived under Section 4 of the Post Conviction Hearing Act by virtue of the prior counselled habeas corpus petition.

However, on January 24, 1969, this court held for the first time in *Commonwealth v. Littlejohn*, 433 Pa. 336, 250 A. 2d 811 (1969), that failure to appeal because of fear of the death penalty on retrial was not a knowing and voluntary waiver of the right to appeal.

The docket entries do not reveal that a hearing was held on the petition or even, for that matter, that any determination was

Since the judgment of sentence is now on direct appeal, appellant may, of course, raise trial errors. Boiled down to their essentials, the errors alleged deal with the charge of the trial court relative to the voluntariness of appellant's confession. Appellant urges that the trial court removed the issue of voluntariness from the jury and virtually compelled a finding adverse to him on that issue.

In Pennsylvania, we follow what is referred to as the Massachusetts rule, which requires the submission of the issue of voluntariness to the jury, even though there has been a *Jackson-Denno* finding by the trial judge of voluntariness. Appellant's trial antedated *Jackson v. Denno, supra,* but, as indicated above, such a hearing was held as a result of appellant's 1965 habeas corpus petition. Even prior to *Jackson v. Denno,* however, the trial judge determined if there existed sufficient evidence of voluntariness to submit the issue of voluntariness to the jury, and that body decided the question. The trial judge in the instant case apparently believed that there was sufficient evidence of coercion to require the jury to pass on voluntariness, because he did indeed charge the jury to determine that question.

Even though the determination of voluntariness made in *Com. ex rel. Joyner v. Brierley, supra,* may meet the federal due process test, *U. S. ex rel. Bennett v. Rundle,* 419 F. 2d 599 (3d Cir. 1969) (concurring opinion), we must determine whether the submission of that issue to the jury was under such circumstances as to permit an objective determination of the question by that body. We conclude that the issue was submitted

made of it. However, all parties seem to be in agreement that on March 3, 1969, Judge SLOANE (apparently finding a *Littlejohn* violation) granted appellant leave to file post-trial motions nunc pro tunc.

to the jury under a charge which, if it did not preclude, certainly made a fair determination so difficult as to require a reversal and the grant of a new trial.

It is, of course, most difficult to discuss those portions of the charge which lead to the conclusion which we have reached without appearing to be quoting isolated sections out of context. Nevertheless, we shall attempt to do so in order to point out the things to which we specifically object, while at the same time making clear that we have studied the entire charge and are convinced that its overall effect was to deny fair jury deliberations to appellant.

The Commonwealth's case depended heavily upon the disputed confession, there being only one witness who implicated appellant, that witness being a fifteen year old boy whose testimony was flatly contradicted by a defense witness whom the Commonwealth witness had testified was with him at the scene. In such circumstances, a fair appraisal of appellant's claim of coercion was crucial to the defense.

Appellant, who was a minimally educated seventeen year old at the time of the alleged crime, testified to a course of police conduct which, if believed, established psychological coercion of the kind which would render his confession inadmissible. In charging the jury, the trial judge treated his testimony in such disdainful fashion as to indicate a clear lack of "judicial equanimity." *Commonwealth v. Brown*, 309 Pa. 515, 164 Atl. 726 (1933).

In the course of charge, the trial court said: "Not one indignity was offered him, according to the evidence presented here, and you can't gather it or impute it from the type of questions that were asked. You must take it from the evidence, and there is no evidence on that point, so there is no innuendo to flow from those questions, and I state that to you because

it is one of the theories of the defendant that he was deprived of his constitutional rights. *There is no evidence in this case—and I say this to you as a matter of law—which would indicate that any of his constitutional rights were denied him.*" (Emphasis supplied.) Appellant was attempting to establish that his Fifth Amendment rights had been violated by police action in coercing a confession. Clearly, then, the court erred in removing this issue from the jury's consideration when there was, in fact, evidence on which the jury could have based a finding of deprivation of the right against self-incrimination.

In this same connection, the trial court, after telling the jury that appellant had sought to establish that "in this whole procedure the defendant's constitutional rights were adverted [sic], he was deprived of his constitutional rights, and he is a victim of the whole police system, and, therefore, what he said on the witness stand was true, and everything else he said was not true, and it was done under force," the court said: "I invite your attention at this particular point with respect to that to some of the questions which were asked of the police officer who was in charge, Detective Gilton. He was asked: 'Question: Did you ever threaten this boy when he was being interrogated by you? Answer: No. Question: You never made any threats to him? No. Did you ever tell him it would go easy with him if he made a statement to you? No. You never said that at all? No. Did you ever tell him he's cooked and unless he confessed it will go hard with him? No.' That is what the police officer said. That is the *only* thing we have in this case, a suggestion which might come from questions, that this man was improperly dealt with." (Emphasis supplied.) What the court, in effect, was charging was that appellant had offered no testimony on voluntariness and that the entire subject

was confined to the quoted cross-examination of the detective. The fact is that appellant recited, in great detail, the circumstances which he believed vitiated his confession.

Elsewhere in the charge, the trial court said: "So, even in that whole scheme of operations the District Attorney still represents this defendant in a general way, because *he stands in his representative capacity for all the people of the Commonwealth, and in a measure, so do the police.* Now, there is an imputation in this case that these police are not to be believed, that this is a sort of setup by the police in order to convict that defendant, that abject defendant, to convict him. Of course, the other side of that is to convict him and let the guilty man go free. Do public servants do that, members of the jury?" (Emphasis supplied.) The court proceeded to review the police testimony, as if in rebuttal, and then, with reference to appellant's testimony of having been "scared," charged: "His exact words were that he was scared when he was in that great big room with the many cubicles, and the police were in there. What was he scared of? *Was he scared of a consciousness of guilt?* I don't know. That is for you to say, whether he was scared. Not one indignity was offered him, according to the evidence presented here, and you can't gather it or impute it from the type of questions that were asked." (Emphasis supplied.)

In *Commonwealth v. Brown, supra,* at page 523, we quoted a somewhat similar charge as follows: "Do not have your reason swayed and your prejudices aroused by the tales of the terrible treatment by the police. Who are those policemen that they talk about, the bloodthirsty, brutal officers, who resorted to inhuman brutality, starvation, and every other thing that was described, in order that they might solve mysteries,

ferret out crime, suppress crime, and enforce the law. They are your representatives, and if they are what counsel for the defense would have you believe, they are not fit to be your representatives, and there is not one of them who should not only be dismissed, but prosecuted for doing the things under the law that he has no right to do." We commented, pages 523-524: "These remarks did not indicate judicial equanimity. They were controversial in tone and phrasing and their import was to ridicule defendant's evidence and arguments as to the alleged police brutality. On whatever proof of the latter it could offer, the defense relied to exclude the confession, and the issue of duress with the conflicting evidence thereon the court should have submitted to the jury dispassionately. *The officers who testified were witnesses not 'representatives.'*" (Emphasis supplied.)

The same elements of ridicule, sarcasm and virtual deification of Commonwealth witnesses which we criticized in *Brown* characterize far too much of the instant charge to allow the conviction to stand. The judgment of sentence must be reversed and the case remanded so that appellant may have a new trial in that atmosphere of "judicial equanimity" which is his due.

Judgment reversed and case remanded for new trial.

Mr. Justice COHEN took no part in the decision of this case.