Commonwealth *v.* White, Appellant.

462

Argued December 2, 1970. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Mary Bell Hammerman,* for appellant.

*Louis Perez, Jr.,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 18, 1971:

This is an appeal from a judgment of sentence of life imprisonment imposed on appellant after his conviction by a jury on a charge of first-degree murder and after denial of his post-trial motions.

At appellant's trial, the Commonwealth produced the following evidence:

On Saturday evening, August 14, 1965, at approximately 10 p.m., appellant entered a small crowded bar in Philadelphia. Lucille Johnson testified that she was sitting within one or two feet of the deceased when she saw appellant walk right up in front of the deceased and extend his right hand as if offering to shake hands with Holloway. When she had turned her head to talk

to another person to her right, Miss Johnson heard three loud noises like the explosion of firecrackers. She turned back to her left and saw the appellant running toward the back of the bar. Eugene Holloway was face down on the floor.

Two other witnesses, LeRoy Stratten and his twenty-three-year old grandson Ernest, were on Holloway's left in the bar that evening. They both saw appellant running to the back of the bar immediately after they heard the shots fired. Ernest Stratten noticed a shiny object, three or four inches long, in the appellant's hand.

William Holloway, uncle of the deceased, was standing at the bar. After the second shot, he turned around and saw the appellant with his right arm bent at the elbow and extended in a horizontal position, standing in front of the deceased. No witness saw anyone but the appellant in front of the deceased at the time the shots were fired. Dr. Edward J. Burke, Police Laboratory Director, testified that tests taken on a shirt removed from the deceased's body after he was shot established, in his expert opinion, that the muzzle of the murder weapon was from one and one-half to two and one-half feet from the deceased when he was shot.

Appellant argues that this evidence was insufficient to sustain a conviction of first-degree murder in that the Commonwealth did not prove premeditation. However, as we recently said in *Commonwealth v. Ewing,* 439 Pa. 88, 92, 264 A. 2d 661 (1970) : ". . . [T]his Court has consistently held that the use of a *gun* on a vital part of the deceased's body *raises the presumption* that the defendant shot with the intent to kill the deceased [citations omitted] . . . . In the absence of any other evidence as to the defendant's intent, it is sufficient to sustain a finding of murder in the first degree." (Emphasis in original.)

It is hard to imagine a more clear example of malice, intent and premeditation than one where, without evidence of provocation, a defendant walks into a bar, walks right up to within two feet of another person and shoots three bullets into a vital part of that person's body.

Appellant's explanation for the same observed facts was that he had just finished shaking hands with the victim and was heading to the rear of the bar when he heard an explosion. He turned and saw Holloway on the floor and heard a voice say "Somebody shot Gene." He ran out of the bar as quickly as possible because he was below the legal age and he believed he would be "harassed" by the police for being in a bar. He was carrying either sunglasses or a pack of cigarettes in his hand, and it was either of these two items which could have been the shiny object that others saw.

Appellant argues that his conviction was based on mere speculation, that his explanation was as likely as the Commonwealth's. Although the Commonwealth could not produce the gun, and none of the witnesses actually saw the gun, we believe that the testimony of the witnesses that only appellant was in close proximity to the deceased when the shots were fired, that he was seen with his arm extended, and that he was seen running away immediately after the shots were fired, and the testimony by the police laboratory expert that the victim had to have been shot from close proximity, proves appellant's guilt beyond a reasonable doubt.

Appellant and his attorney, each of whom filed briefs, raise several other arguments, none of which has merit.

First, appellant argues that it was error for the court not to comment on the prosecutor's prejudicial opening statement wherein he referred to the killing as a "cold-blooded assassination" in a trial which began

about a week after Senator Robert Kennedy was assassinated in California. However, appellant's attorney did not object to these remarks at the time, indicating that originally he did not feel that the prosecutor characterized this point-blank shooting as an assassination in order to inflame the jury unfairly by reminding them of Senator Kennedy's death. His failure to object at a time when any error could have been cured by the court precludes him from raising the issue now.

Next, appellant contends that the court erred in refusing to charge the jury on voluntary manslaughter. A request for a charge on voluntary manslaughter could only be based on a theory that appellant actually shot the deceased but under circumstances of legal passion or provocation. Here appellant denied shooting the victim. No evidence was offered concerning legal provocation or passion. In such circumstances, the trial judge is not required to charge the jury on the issue of manslaughter. *Commonwealth v. Corbin*, 432 Pa. 551, 247 A. 2d 584 (1968), *Commonwealth v. Heckathorn*, 429 Pa. 534, 241 A. 2d 97 (1968).

Appellant next contends that the prosecuting attorney's closing argument was unfairly prejudicial. At this time, in response to the defense's emphasis that the Commonwealth had failed to produce the murder weapon, the prosecutor pointed to the appellant and told the jury: "I have an idea he could tell us where that weapon is."

We do not believe that these remarks deprived appellant of a fair trial. They were not knowingly false. They naturally followed from the Commonwealth's theory of the case, i.e., that appellant was the killer, from which it would follow implicitly that he would know where the gun was. If the jury was disposed to doubt the Commonwealth's case, such comment would be ignored. Moreover, when the court began its charge soon

afterward, it told the jury that tension and pressure sometimes cause unavoidable flare-ups, which would sufficiently put the jury on notice to discount the emotional histrionics of the two participating counsel.

Appellant's last argument, made by his attorney, and in his own supplemental brief, was that the charge of the court was prejudicial. We have fully reviewed the charge. We find that none of the arguments alleging prejudice in the court's charge has merit. The slight inaccuracies in the court's recollection of Lucille Johnson's testimony were not objected to by counsel when they could have been cured and, therefore, cannot be relied upon at this late date.

Judgment of sentence affirmed.

Mr. Justice JONES took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.