Commonwealth *v.* Abrams, Appellant.

296

Argued April 24, 1970. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Hyman Lovitz*, with him *Dennis E. Haggerty* and *Briscoe & Haggerty*, for appellant.

*Michael Mather*, Assistant District Attorney, with him *James D. Crawford*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, June 28, 1971:

This is an appeal from judgment of sentence following a jury verdict finding Thomas Abrams guilty of voluntary manslaughter in the death of one George Welhof. Briefly stated, the facts are as follows:

During the early morning hours of August 3, 1967, appellant Abrams called the police to the ramshackle residence of Welhof, a seventy year old derelict. Abrams met the police and directed them to the third floor of the building where the police found Welhof, filthy, disheveled and unconscious. With Abrams at the time was one Dorothy Lorimer, the second floor tenant of the dwelling, whom Abrams had been visiting. The

police wagon crew treated the case as an ordinary hospital case, interviewing Abrams and Mrs. Lorimer briefly before taking Welhof to the hospital. Welhof was pronounced dead shortly after arrival at the hospital.

A post-mortem examination revealed that Welhof had died as a result of multiple injuries to his head, neck and thorax. Upon determining that a homicide had been committed and receiving a statement from Mrs. Lorimer that tended to implicate Abrams, the police took Abrams into custody for questioning at 8:20 A.M. on the following day, August 4, 1967. Upon his arrival at police headquarters Abrams was given something to eat. At approximately 11:30 A.M. the warnings prescribed by *Miranda v. Arizona,* 384 U.S. 436 (1966) were read to Abrams, and he was interviewed for the first time. After approximately two hours of oral questioning, Abrams gave an oral exculpatory statement; the burden of that statement was that he had been visiting Mrs. Lorimer in her apartment on the evening in question; that they heard a moan from Welhof's apartment on the third floor; and that upon investigation, they found Welhof, bloody and unconscious, and summoned the police.

After he had given this statement, Abrams requested and was given permission to telephone a lawyer whom he had retained on a prior occasion.[1] Following this telephone conversation, Abrams rested for a period of

---

[1] At the extended hearing on appellant's motion to suppress his confession, Abrams stated that his lawyer had told him that he could not represent Abrams unless he were paid $500. Abrams did not have this sum of money. Abrams also stated that the attorney told him that he had nothing to worry about. There is no indication in the record that the police were made aware of Abrams' attorney's refusal to represent him at the time of the questioning or at any time prior to the suppression hearing. The lawyer was not called as a witness at the suppression hearing.

time and at approximately 3:30 P.M. asked to take a lie detector test. The test was given, and following its conclusion, Abrams was questioned for a second time beginning at 7:30 P.M. The *Miranda* warnings were not repeated immediately prior to this interrogation. In the course of this questioning Abrams made an inculpatory statement to police, the substance of which was that he had beaten Welhof when he refused to rent him a room. Thereafter the *Miranda* warnings were repeated for a second time. Abrams indicated that he had no desire to consult a lawyer, stating that he had already spoken to his lawyer, and the police reduced the substance of his oral admissions to writing. This process of transcription was halted briefly at 9:00 P.M. to enable Abrams to have something to eat. It was completed at 10:00 P.M.

At that time the police learned that Abrams was essentially illiterate. Accordingly they read to him the question-and-answer statement which they had recorded, and Abrams signed it. The statement amounted to a confession that Abrams had beaten Welhof to death.

Three questions are presented by this appeal. They will be considered seriatim.

## 1. Denial of the Assistance of Counsel

Appellant's first contention is that the failure of the police to repeat the *Miranda* warnings to Abrams immediately prior to the evening interrogation session which resulted in his giving incriminatory statements constituted a denial of Abrams' rights under *Miranda v. Arizona, supra*. Appellant contends that the *Miranda* warnings originally given to him at 11:30 A.M. on the morning of August 4 had become "stale" by 7:30 in the evening when he made his incriminating statements.

It is perfectly clear that before a suspect may be subjected to custodial interrogation he must be given the constitutionally prescribed *Miranda* warnings.

In the present case the fact that Abrams was given the *Miranda* warnings before any interrogation and expressly waived his rights thereunder in response to questions has not been contested. In addition, the *Miranda* warnings were repeated after he gave an oral incriminating statement in the evening but before that statement was reduced to writing; at that time Abrams again waived his rights, indicating that he had already spoken with his attorney and had no need of further legal assistance.

We have not held that the *Miranda* warnings must be given immediately prior to the commencement of every interrogation session nor do we believe that such a rule is necessary. This position is shared by other jurisdictions which have determined that the prosecution has no absolute duty to repeat the *Miranda* warnings at each successive stage of an interrogation. *Miller v. United States,* 396 F. 2d 492, 495-96 (8th Cir. 1968); *Tucker v. United States,* 375 F. 2d 363 (8th Cir. 1967); *People v. Hill,* 39 Ill. 2d 125, 233 N.E. 2d 367 (1968). See also *State v. Magee,* 52 N.J. 352, 245 A. 2d 339 (1968); *Maguire v. United States,* 396 F. 2d 327, 331 (9th Cir. 1968), *cert. denied,* 393 U.S. 1099 (1969).

Notwithstanding the fact that an appellant has been informed of his right to free counsel and has waived that right on the record, he may challenge the validity of that waiver, but in such a case "the burden is upon him in any subsequent attack on the conviction to establish by a preponderance of the evidence that his acquiescence was not sufficiently understanding and intelligent to constitute an effective waiver." *Commonwealth ex rel. Mullins v. Maroney,* 428 Pa. 195, 199, 236 A. 2d 781 (1968). Appellant attempts to meet

this burden by citing his low intellectual level and his attempt to secure counsel.

As to the first contention, Abrams was 37 years old, lived alone without aid and supported himself as a trucker's helper working out of a union hiring hall. Evidence that Abrams lacked a formal education, was illiterate and had an I.Q. of 69 was presented at the suppression hearing, but Abrams' own testimony at that hearing reveals a person who was fully capable of understanding and responding to questions and forming a coherent and responsive narrative. There is no doubt that a person of below average mental ability can knowingly and intelligently waive a constitutional right. *Commonwealth ex rel. Joyner v. Brierley,* 429 Pa. 156, 239 A. 2d 434 (1968) and *Commonwealth v. Willman,* 434 Pa. 489, 255 A. 2d 534 (1969). We are not persuaded that appellant met his burden of proving that his waiver of his *Miranda* rights and his decision to submit to interrogation were not intelligent acts.

Appellant also contends that his unsuccessful attempt to secure the services of his previous lawyer demonstrates his failure to understand his right to free counsel. It is difficult to see how Abrams' evident appreciation of his right to counsel conclusively proves his failure to appreciate his right to appointed counsel, both such rights having been set before him in the *Miranda* warnings. Appellant contends, furthermore, that following his telephone conversation with his lawyer the police should have questioned Abrams about the substance of that conversation; Abrams concludes that had they done so, they would have realized that he was indigent and not truly aware of his right to appointed counsel. The contention that police are required to interrogate a suspect about his conversations with his attorney is both novel and without merit.

On this record we conclude that the lower court did not err when it determined that Abrams' waiver of his rights under *Miranda* was both voluntary and intelligent.

## 2. Voluntariness of the Confession

Appellant also contends that his confession was involuntary. Following a lengthy suppression hearing this contention was rejected by the court below.[2] We find no basis for overturning that decision.

Abrams' interrogation was not unduly prolonged; it was not conducted in an unusual manner nor is there any suggestion of physical coercion. The interrogation was interrupted on several occasions for rest periods and for meals and there is no indication that Abrams was kept incommunicado; indeed, in light of his telephone call to his lawyer, the opposite is clearly the case. As noted above, Abrams is a man of limited intelligence, but a careful reading of the record indicates that he is fully able to respond intelligently to questions and state his story. On the record before us, we find no basis for a conclusion that Abrams' confession was the involuntary product of a will overborne. See *Commonwealth ex rel. Joyner v. Brierley, supra.*

## 3. Testimony of the Witness Lorimer

Appellant's third and final contention is that the trial court erred in denying appellant's motion in ar-

---

[2] The burden is upon the Commonwealth to prove by a preponderance of the credible evidence that a confession is voluntary. *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 146-47, 239 A. 2d 426 (1968). The suppression hearing judge determined that voluntariness had been established beyond a reasonable doubt. The trial court applied the same standard in instructing the jury on the matter of voluntariness. Cf. *Commonwealth v. Camm,* 443 Pa. 253, 277 A. 2d 325 (1971).

rest of judgment or, alternatively, his motion for a new trial on the basis of a number of allegedly confusing, contradictory, and exculpatory statements contained in the testimony of the Commonwealth's key witness, Dorothy Lorimer, a woman of admitted alcoholic tendencies.[3] We cannot agree.

No objection to the competency of Dorothy Lorimer was raised before she testified, nor did defendant move to strike her testimony. A witness is not incompetent *per se* merely because it is established that she drinks. See *Commonwealth v. Farrell*, 319 Pa. 441, 181 Atl. 217 (1935) and *Commonwealth v. Davis*, 183 Pa. Superior Ct. 347, 132 A. 2d 408 (1957). In the present case Mrs. Lorimer's alcoholic propensity and the fact that she was drinking on the night of the murder were explored at length by defense counsel on cross-examination. While Mrs. Lorimer's testimony is not in all respects a model of clarity, the weight to be given to her testimony was a matter for the jury, and we find no basis for concluding that the lower court erred in refusing to disturb the jury's verdict in this case.

In light of the foregoing, we affirm the judgment of sentence.

Mr. Justice JONES took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.

---

[3] Mrs. Lorimer testified in substance that after he had visited with her, Abrams went to Welhof's apartment to see about getting a place to stay, that she heard noises like furniture moving, and that she heard Welhof say "Leave me alone" and Abrams say "How would you like it with your pockets empty?" Then, the witness testified, Abrams came back downstairs and asked Mrs. Lorimer to come upstairs, saying that he thought Welhof was dead.