Commonwealth *v.* Cobbs, Appellant.

Argued March 15, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Carl Max Janavitz,* with him *Janavitz, Janavitz & Kanfoush,* for appellant.

*Robert L. Campbell,* Assistant District Attorney, with him *Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, May 23, 1973:

Appellant, James H. Cobbs, was found guilty of murder in the first degree before a jury on July 16, 1971, in the Allegheny County Court of Common Pleas. On August 16, 1972, appellant's motion for a new trial and in arrest of judgment was denied by the court en banc. A sentence of life imprisonment was imposed. Appellant has appealed and we now affirm.

Appellant raises only two issues. He first contends that his timely motion to quash the existing jury panels should have been granted. Appellant argues that the disparity in juror eligibility requirements between that section of the code governing Allegheny County[1] and the relevant provisions pertaining to the remaining coun-

---

[1] A juror in counties of the second class "shall be an American citizen not less than twenty-one years of age, . . ." Act of May 11, 1925, P. L. 561, §9, as amended, 17 P.S. §1279.

ties,[2] violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, in view of the Twenty-Sixth Amendment granting 18-year-olds the right to vote. Appellant's second contention is that he did not knowingly and intelligently waive his right to remain silent during his interrogation by the police.

The impetus for appellant's first claim was the ratification, on July 5, 1971, of the Twenty-Sixth Amendment of the United States Constitution granting 18-year-olds the right to vote. Appellant, a 17-year-old at the time of his trial,[3] maintains that he was denied equal protection of the laws because section 9 of the Act of May 11, 1925 prohibited persons under 21 years of age from being called in the venire in Allegheny County, whereas in other counties of the Commonwealth persons between 18 and 21 were eligible to serve as jurors subsequent to the adoption of the Twenty-Sixth Amendment. Essentially appellant is attacking the jury selection system in Allegheny County in effect at the time of his trial. He contends the system was constitutionally defective because eligibility for jury service varied with the class of county. Appellant asserts that because in other counties prospective jurors were

---

[2] In counties of the first class (Philadelphia), names of jurors are selected from "a duly certified list of all the registered electors, . . ." Act of May 10, 1949, P. L. 1066, §2, 17 P.S. §1252. In counties of the third class "[o]nly adult citizens of the United States . . . shall be eligible as jurors." Act of April 16, 1925, P. L. 244, §2, 17 P.S. §1322. In other counties jurors are selected "from the whole qualified electors of the respective count[ies], . . ." Act of April 10, 1867, P. L. 62, §2, 17 P.S. §942.

[3] Although appellant was a juvenile, the Commonwealth filed a petition with the Juvenile Court of Allegheny County for certification so that the murder charge could be presented to the grand jury, and the appellant treated as an adult. This petition was granted.

only required to be "qualified electors"[4] the 21-year-old requirement in Allegheny County was unconstitutional after the adoption of the Twenty-Sixth Amendment, on July 5, 1971.

On July 9, 1971, the Pennsylvania Legislature implemented the mandate of the Twenty-Sixth Amendment by amending the Election Law to provide, inter alia, that "[e]very citizen of this Commonwealth 18 years of age . . . shall be entitled to vote at all elections, . . ."[5] Appellant, on July 14, 1971, immediately prior to the selection of a jury, moved "to quash the existing panels" selected prior to either July 5, or July 9, because no persons between the ages of 18 and 21 were on the panels. The motion was denied and the jury was selected on July 14, 1971, from those panels previously selected.

Appellant does not contest the validity or constitutionality of the Allegheny County juror selection law as it existed prior to the Twenty-Sixth Amendment or the amended Pennsylvania Election Law. Appellant only argues that in light of the constitutional and statutory changes, granting 18-year-olds the right to vote, the panels from which his jury was selected, on July 14, 1971, should have included persons between the ages of 18 and 21. We must therefore determine whether already existing jury panels, validly selected prior to July 5 and July 9, 1971, became invalid on July 14, 1971, because the panel contained no 18- to 21-year-old persons.

Initially we note that "[i]t has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors." *Carter v. Jury Commission of Greene County*, 396 U.S. 320, 332, 90 S. Ct. 518, 525 (1970) ; see *Brown v. Allen*, 344 U.S.

---

[4] See Act of April 10, 1867, P. L. 62, §2, 17 P.S. §942.

[5] Act of July 9, 1971, P. L. 197, §1, 25 P.S. §2811 (Supp. 1972).

443, 473, 73 S. Ct. 397, 416 (1953). This Court previously indicated it was unconvinced that "the disparity in the statutory provisions among the Counties amounts to a deprivation of the Equal Protection of Laws afforded . . . by Amendment XIV of the Constitution of the United States." *Commonwealth v. Aljoe,* 420 Pa. 198, 207, 216 A. 2d 50, 55 (1966). See also *Commonwealth v. Fisher,* 447 Pa. 405, 290 A. 2d 262 (1972).

Moreover, two cogent reasons compel the rejection of appellant's claim of jury panel invalidity. First of all, the Commonwealth argues, and we agree, that the right to vote does not necessarily confer the right to sit on a jury. Recently the Federal District Court for the Southern District of New York responding to a similar jury challenge arrived at the same conclusion. "There is simply no justification for defendant's claim that merely because 18-to-21-year-olds have been given the right to vote, the Constitution compels that they be given the right to serve on juries. The right to vote and the right to sit in judgment of others have certain fundamental differences which cannot be overlooked. The act of voting is a personal expression of favor or disfavor for particular policies, personalities, or laws. The voter is motivated by his personal self-interest, or what he considers best for the general populace.

"However, when one sits on a jury, he is required to accept and apply the law as the judge gives it to him, whether or not he agrees with it and no matter what his personal feelings are toward the parties in question. He must have the maturity and understanding to do what may often be an unpleasant task.

"Every case which has dealt with the problem has concluded that 18-to-21-year-olds do not have a constitutional right to serve on juries. United States v. McVean, 436 F. 2d 1120 (5th Cir. 1971); United States v. Tantash, 409 F. 2d 227 (9th Cir.), cert. denied, 395 U.S. 968, 89 S. Ct. 211, 23 L. Ed. 2d 754 (1969); George

v. United States, 196 F. 2d 445 (9th Cir.), cert. denied, 344 U.S. 843, 73 S. Ct. 58, 97 L. Ed. 656 (1952) ; United States v. Waddy, 71 Cr. 641 (S.D.N.Y. Nov. 16, 1971) ; United States v. Deardorff, 71 Cr. 111 (S.D.N.Y. Oct. 5, 1971) ; United States v. Gargan, 314 F. Supp. 414 (W.D.Wis. 1970). These cases point out that it is perfectly feasible for 18-to-21-year-olds to have a constitutional right to express their opinions, attitudes, and philosophies in the election process, while not having the right to sit in judgment of others." *United States v. Guzman,* 337 F. Supp. 140, 144 (S.D.N.Y. (1972)). See also *Johnson v. State,* 260 So. 2d 436 (Miss. Sup. Ct. 1972) ; *Shelby v. State,* no official, 479 S.W. 2d 31 (Tex. Ct. Crim. App. 1972). Manifestly, merely granting 18- to 21-year-olds the right to vote does not, without more, create in this class of voters the right to sit as jurors. Eligibility for jury service for 18-year-olds was, in fact, recently conferred by specific legislative direction.[6]

Secondly, even if appellant's contention were correct it would have been unreasonable to require, between July 9 and July 14, the discharge of already existing and validly selected jury panels to be replaced by entirely new panels in order to give immediate effect to the constitutional and legislative declarations of July 5 and July 9, 1971. The available jury panels had been lawfully selected and it would have been not only disruptive but also unnecessarily burdensome to establish a new jury wheel containing the requisite proportion of 18- to 20-year-old names within the five-day period between the legislative amendment and the selection of appellant's jury. The court recognizing the practical time factors necessarily involved in making

---

[6] Our Legislature recently amended section 9 of the Act of May 11, 1925, thereby making 18-year-olds eligible to serve as jurors. See Act of June 16, 1972, P. L. 424, No. 123, §1, 17 P.S. §1279(a).

the new jury selection process operational, as well as its responsibility to conduct jury trials, correctly denied the motion to quash the jury panels.

Appellant's second contention is that the asserted waiver of his right to remain silent was neither knowing or intelligent because at the time of the alleged waiver he was only 17 years old, with a ninth grade education, and was intoxicated. Therefore, he argues that a confession taken subsequent to the challenged waiver should have been suppressed, and not admitted at trial.

At the suppression hearing the arresting officer testified that appellant was "intoxicated" when he was arrested at approximately 9:30 p.m. However, the interrogating officer testified that at about 11:00 p.m. when he advised appellant of his rights[7] that "[h]is comprehension was excellent." Appellant's own testimony at the suppression hearing was quite equivocal on the issue of whether he was so intoxicated during interrogation that he did not understand what was happening. Evaluating all of the testimony the suppression court found that appellant did make a knowing and intelligent waiver of his right to remain silent. See *Commonwealth v. Smith,* 447 Pa. 457, 291 A. 2d 103 (1972).

It is settled that the Commonwealth has the burden of proving a valid waiver by demonstrating not only that adequate warnings were given but also that the defendant understood the import of those warnings. See *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S. Ct. 1602, 1628 (1966); *Commonwealth v. Goldsmith,* 438 Pa. 83, 85, 263 A. 2d 322, 323 (1970). Moreover, as the

_____

[7] Appellant does not contest the fact that the warnings given him prior to interrogation were adequate. In fact, the record reveals that the warnings read to appellant fully informed him of all relevant constitutional rights.

404

United States Supreme Court has repeatedly empha-sized, the circumstances surrounding a juvenile's con-fession must be examined with greater scrutiny than that of an adult. *In Re Gault,* 387 U.S. 1, 45, 87 S. Ct. 1428, 1453 (1967); *Gallegos v. Colorado,* 370 U.S. 49, 53-54, 82 S. Ct. 1209, 1212 (1962); *Haley v. Ohio,* 332 U.S. 596, 599-600, 68 S. Ct. 302, 303-04 (1948).

Applying these standards, the record presented to us amply supports the suppression court's finding that the Commonwealth did meet its burden of establishing a knowing and intelligent waiver by appellant of his right to remain silent.

Judgment of sentence affirmed.

Mr. Justice NIX concurs in the result.