Commonwealth *v.* Mennyweather, Appellant.

Argued May 1, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused December 27, 1974.

*William J. Brady, Jr.,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, October 16, 1974:

The appellant, Ronald Mennyweather, was tried for the murder of one Willie Frieson. A jury returned a verdict of first degree murder and sentenced him to life imprisonment. Post-verdict motions were denied and this appeal followed.

The prosecution has accurately summarized the facts contained in the record. About 12:30 a.m., January 15, 1971, a witness, James Johnson, entered a bar located on Seventh Street, a few doors south of Berks Street, in the City of Philadelphia. He observed appellant, Ronald Mennyweather, sometimes known as "Pompey" seated at the bar together with one Robert Jefferson, also known as "Butch" (a co-defendant, also indicted for murder and tried separately). Johnson also seated himself at the bar. About 12:45 a.m., the deceased, Willie Frieson, entered the bar and seated himself near the witness. The witness, Johnson, later had occasion to go to the men's room. When he came back to the bar he observed that appellant was holding a gun in his hand. Johnson walked around the other side of the bar and sat down next to the deceased. Shortly before 2:00 a.m., Johnson and the deceased left

the bar and walked south on Seventh Street toward Montgomery Avenue (one block south of Berks Street). Appellant and his companion, Jefferson, followed them. Appellant called out to the deceased "come here." The deceased left the witness standing at Seventh Street and Montgomery Avenue and walked back to the other two. There was some talking among them which the witness could not distinguish; appellant was waving a gun in deceased's face. The witness was directed by someone to "go ahead"; he was unable to recall who told him to go. Johnson "left," and went home.

Several other persons who were patrons of the bar that night also testified. Rebecca Hodges observed appellant and Jefferson seated at the bar, she saw James Johnson enter and saw the deceased enter later; appellant left the bar for about ten minutes and returned; Jefferson inquired, "Did you get what I asked you?"; appellant handed Jefferson a gun. Rebecca Hodges feared trouble, left and went across the street to a house and looked out from a second story window. She saw Johnson and the deceased leave the bar; shortly thereafter, appellant and Jefferson followed them; the two groups spoke to each other; appellant, Jefferson and the deceased turned the corner of Montgomery Avenue and went east toward Marshall Street; the witness then heard three shots fired; the police cars arrived momentarily.

Another patron, Romaine Leggett, corroborated the earlier occurrences; she also observed that when the appellant returned to the bar after having left for a short period he had changed his outer garments; instead of a knee-length cashmere coat he wore a waist size leather coat. Another witness, Ola Mae Cyrus who lived on Marshall Street, a short distance from where deceased's body was subsequently found, heard, at about the time of the incident, two or three gun shots. Police, who responded to a radio call reporting a shoot-

ing in the 1800 block of Marshall Street searched the area but did not find the body; they did not cover the alley where it was found later that morning.

At about 9:00 a.m., a boy, James Rivera, going into an alley running east and west between Marshall and Sheridan Streets, near Montgomery Avenue, to fetch some wood, discovered the body of the deceased lying on the ground; he called the police. An Assistant Medical Examiner, Dr. Robert Segal, was summoned. Dr. Segal concluded after examination of the body that death had occurred between six and twelve hours prior to his examination. An autopsy disclosed that death was caused by three gunshot wounds, two of which entered the head and the third entered the neck. The head wounds penetrated the skull from the right side of the head; the neck wound was on the left side. From the nature of the wounds and evidence of powder, Dr. Segal opined that the weapons were fired within inches of the body. Three bullets were recovered; the two taken from the head were of .22 caliber; the one from the neck of .32 caliber. There was also evidence that Jefferson (Butch) had said, prior to the killing, that he was going "to get" the deceased.

The defense did not present any witnesses but the prosecution agreed to two defense requests for stipulations: (1) that the victim had alcohol in his bloodstream and (2) that the appellant wore dark glasses because of eyestrain.

The appellant first argues that the prosecution made certain comments in summation which drew the jury's attention to the appellant's failure to take the stand. There was no objection, however, to these comments and, thus, the issue has been waived and cannot be considered on appeal. "When counsel misstate facts or material evidence, or resort to comment unfair or unduly prejudicial to the other side, it is the duty of the opposing counsel at once to call the attention of the

court to the matter . . . ." *Commonwealth v. Ezell,* 212 Pa. 293, 296, 61 A. 930, 931 (1905) ; *see Commonwealth v. Sampson,* 454 Pa. 215, 311 A.2d 624 (1973) ; *Commonwealth ex rel. Sprangle v. Maroney,* 423 Pa. 589, 225 A.2d 236 (1967) ; *Commonwealth v. Gockley,* 411 Pa. 437, 192 A.2d 693 (1963) ; *Commonwealth v. Eisenhower,* 181 Pa. 470, 37 A. 521 (1897) ; *Commonwealth v. Windish,* 176 Pa. 167, 34 A. 1019 (1896).

The second issue raised is whether the trial court erred in sustaining the prosecution's objection to the calling of the appellant's brother as a witness. The proposed testimony concerned an altercation between the appellant's co-defendant and the victim which occurred approximately one month.prior to the death of the victim. The appellant argues that the testimony would have shown the aggressive nature of the victim. The trial court sustained the prosecution's objection because the testmony would have been remote and irrelevant. We cannot find that the trial court abused its discretion. *See Commonwealth v. Amos,* 445 Pa. 297, 284 A.2d 748 (1971) ; *Commonwealth v. Straesser,* 153 Pa. 451, 26 A. 17 (1893).

The third issue raised is whether the appellant was unfairly prejudiced by the prosecution's alleged use of its preemptory challenges to purposefully exclude "jurors by reason of race." This issue, however, was not raised before the jury was sworn or at any time during the trial. It was raised for the first time during post-verdict motions and the trial court properly held that the issue had been waived. *See* Act of March 31, 1860, P. L. 427, §53, 19 P.S. §832. *See also Moore v. United States,* 432 F.2d 730 (3d Cir. 1970) ; *Commonwealth v. Smith,* 443 Pa. 151, 277 A.2d 807 (1971) ; *Commonwealth v. Eckhart,* 430 Pa. 311, 242 A.2d 271 (1968) ; *Commonwealth v. Raymond,* 412 Pa. 194, 194 A.2d 150 (1963), *cert. denied,* 377 U.S. 999, 12 L.Ed.2d 1049, 84 S. Ct. 1930 (1964).

The fourth issue raised by the appellant is whether the evidence was sufficient to sustain a verdict of first degree murder. We have previously recited the significant facts. Although the evidence was all circumstantial and there were no eyewitnesses to the actual shooting, the evidence and the reasonable inferences arising therefrom were sufficient to warrant the jury verdict. *See Commonwealth v. Malone*, 444 Pa. 397, 281 A.2d 866 (1971); *Commonwealth v. Petrisko*, 442 Pa. 575, 275 A.2d 46 (1971).

The last issue concerns a claim that the prosecutor prejudiced the appellant because he "asserted his personal opinion in regard to the testimony of the witnesses and the defendant and failed to seek justice but did everything in his power merely to convict the defendant." It is alleged that the prosecutor's personal opinion was expressed in one leading question asked of a prosecution witness. We have examined this claim and find it to be without merit. It is also alleged that the prosecutor unfairly expressed personal opinions during summation. We have not considered this allegation since no objection was made at trial to those portions of the summation. *See Commonwealth v. Sampson*, 454 Pa. 215, 311 A.2d 624 (1973); *Commonwealth v. Ezell*, 212 Pa. 293, 61 A. 930 (1905). Although the appellant made certain objections at the conclusion of the prosecution's summation, none of those objections concerned the portions of the summation alleged to be prejudicial to the appellant. Appellant's brief erroneously states that the defense counsel challenged the prosecution's entire summation.

Judgment of sentence affirmed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.