354 A.2d 886
**COMMONWEALTH of Pennsylvania**
v.
**Arthur JOHNSON, Appellant.**

Supreme Court of Pennsylvania.

Argued April 7, 1975.

Decided April 7, 1976.

Reargument Denied June 8, 1976.

---

6. This result would also appear to be required by *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

148

---

,Rudolph S. Pallastrone, George A. Bachetti, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Glen S. Gitomer, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Arthur Johnson, the appellant, was convicted of murder in the first degree for the killing of one Jerome Wakefield after a trial by jury. Post-trial motions were denied, and Johnson was sentenced to life imprisonment. This direct appeal followed.[1]

The only evidence presented at trial by the Commonwealth which linked appellant to the murder with which he was charged was a confession elicited from Johnson subsequent to his arrest. Johnson challenged the admissibility of the confession in a pre-trial suppression hearing on three grounds: (1) the confession was the tainted product of an illegal arrest; (2) Johnson did not knowingly and intelligently waive his right to remain silent and to have appointed counsel present during questioning; (3) the confession was coerced and involuntary. The suppression court rejected these contentions and ruled that the confession was admissible.

---

1. This direct appeal is taken pursuant to Act of July 31, 1970, P. L. 673, 17 P.S. § 211.202(1).

Pursuant to the procedure provided by Rule 323(j) of our Rules of Criminal Procedure, 19 P.S. (1975 Pamphlet), Johnson renewed at trial his challenge to the validity of the confession.[2] After the close of evidence, the trial judge submitted the question of the validity of the confession to the jury, charging them to disregard the confession should they find the waiver of rights to have been unintelligent or unknowing, or the confession involuntary. (The illegal arrest ground was not pressed at trial). By its verdict of guilty the jury necessarily found against Johnson with respect to both of those contentions. On this appeal appellant alleges that several errors by the suppression court and at trial compel a new trial. As these arguments have either been waived or are without merit we will affirm.

## I.

Johnson first challenges the ruling of the suppression court that his confession was admissible. In reviewing this ruling our initial task is to determine whether the factual findings are supported by the record. "In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much evidence of the defense as, fairly read in the context of

2. This procedure has recently been explained as follows:
 "The rights of a defendant in this area are, in our opinion, adequately protected by Rule 323 of the Pennsylvania Rules of Criminal Procedure, 19 P.S. (1975 Pamphlet), relating to the suppression of evidence. That rule is modelled after the so-called Massachusetts or 'humane' rule approved by the Supreme Court of the United States in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). It provides that prior to trial, upon motion of the defendant to suppress evidence allegedly obtained unconstitutionally, a hearing shall be held to determine the admissibility of the challenged evidence. If the evidence is found to be admissible, the defendant is foreclosed only from challenging its admissibility at trial; he may still contest the validity of such evidence notwithstanding its admission. For example, in the case of a confession, the challenge to it on involuntariness grounds may be renewed at trial. See *Commonwealth v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971), cert. denied, 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d

the record as a whole, remains uncontradicted." *Commonwealth v. Goodwin*, 460 Pa. 516, 522, 333 A.2d 892, 895 (1975). If, when so viewed, the evidence supports the factual findings we are bound by such findings; we may only reverse if the legal conclusions drawn therefrom are in error.[3] In the instant case, our review of the record satisfies us that the hearing judge's factual findings were amply supported, and that given these findings we correctly concluded that Johnson's arrest was valid, that his waiver was effective and his confession was voluntary. We will deal with these issues seriatim.

(1) The circumstances giving rise to Johnson's arrest may be briefly described: On October 6, 1970, Jerome Wakefield died as a result of knife and bullet wounds; a victim of Philadelphia gang warfare. The next day the police arrested one Alexander Payne, who told the police that Johnson had aided him in the slaying of Wakefield. Payne then voluntarily submitted to a lie detector test. On the basis of the information thus supplied, and without first procuring a warrant, the police went to Johnson's home and there arrested him for the murder of Jerome Wakefield. Appellant now argues, as he did below, that this warrantless arrest was without probable cause, that the confession obtained was a tainted fruit thereof, and that the suppression court therefore erred in ruling the confession admissible.

589 (1972); *Commonwealth v. Joyner*, 441 Pa. 242, 272 A.2d 454 (1971)."
*Commonwealth v. Green*, 464 Pa. 557, 561–562, 347 A.2d 682, 684 (1975).

3. *Commonwealth v. Tucker*, 461 Pa. 191, 335 A.2d 704 (1975); *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975); *Commonwealth v. Eden*, 456 Pa. 1, 317 A.2d 255 (1974); *Commonwealth v. Cobbs*, 452 Pa. 397, 305 A.2d 25 (1973); *Commonwealth v. Stafford*, 451 Pa. 95, 301 A.2d 600 (1973); *Commonwealth v. McIntyre*, 451 Pa. 42, 301 A.2d 832 (1973); *Commonwealth v. Sharpe*, 449 Pa. 35, 296 A.2d 519 (1972); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968).

■ Johnson's arrest was, of course, valid if it was supported by probable cause.

> "The law is clear a warrantless arrest is constitutionally invalid unless based on probable cause, which is defined as, facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information, sufficient in themselves to warrant a man of reasonable caution to believe an offense has been or is being committed, and the person to be arrested has committed the offense." *Commonwealth v. Jeffries*, 454 Pa. 320, 323, 311 A.2d 914, 916 (1973).

See also *Commonwealth v. Jones*, 457 Pa. 423, 427, 322 A.2d 119, 123 (1974); *Commonwealth v. Mackie*, 456 Pa. 372, 375, 320 A.2d 842, 843 (1974); *Commonwealth v. Norwood*, 456 Pa. 330, 332, 319 A.2d 908, 909 (1974).

■ The essence of appellant's argument is that the information supplied to the police by Payne did not provide the "reasonably trustworthy information" necessary to satisfy the probable cause standard. This contention, however, is in the teeth of a well-settled rule in this Commonwealth that "[t]he confession of a codefendant which implicates the suspect will supply the probable cause for a warrantless arrest." *Commonwealth v. Kenney*, 449 Pa. 562, 567, 297 A.2d 794, 796 (1972). See also *Commonwealth v. Rush*, 459 Pa. 23, 25, 326 A.2d 340, 341 (1974). Accordingly, we must reject appellant's first contention.[4]

■ (2) Johnson next argues that his confession was inadmissible and should have been suppressed because the Commonwealth failed to establish that he knowingly

---

4. Because we have concluded that the arrest in question was valid, we need not discuss the contention pressed by the appellant that the confession is the tainted product of an illegal arrest. See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L. Ed.2d 441 (1963); *Commonwealth v. Whitaker*, 461 Pa. 407, 336 A.2d 603 (1975).

and intelligently waived his *Miranda* rights prior to submitting to questioning by the police. *Commonwealth v. Cobbs*, 452 Pa. 397, 403, 305 A.2d 25, 28 (1973).

The Commonwealth's evidence at the suppression hearing tended to establish that Johnson was adequately advised of his rights; that he at all times appeared alert and normal; that he seemed to comprehend each of the warnings when given; and that he answered in the affirmative when asked if he understood each warning. Johnson testified at the hearing that he had no present recollection of having been advised of his rights or of having waived them, and (at least by implication) that he did not have a sufficient educational background to comprehend the warnings as given. The hearing judge discounted this testimony and, noting that he "was impressed with [Johnson's] understanding of the matter by the way he testified during the suppression hearing," concluded that Johnson had effectively waived his rights. This conclusion was amply supported by the record.

(3) Finally, appellant challenges the suppression court's ruling that Johnson's confession was voluntarily given. The evidence produced at the hearing established the following chronology of events: Johnson was arrested at 6 a. m. and was immediately taken to an interrogation room in the homicide division headquarters where he was handcuffed to a chair and left alone. At 8:30 a. m. he was advised of his *Miranda* rights and questioned for five minutes. At 8:35 a. m. he was permitted to go to the bathroom. Johnson then consented to take a lie detector test. The test began at 8:55 a. m. and lasted two hours. At 10:55 a. m. Johnson was supplied with food, was allowed again to use the bathroom, and was given an opportunity to rest. The interrogation resumed at 11:30 a. m. and continued until 12:05 p. m. at which time Johnson made an oral confession of his participation in the crime and agreed to give a formal statement.

■ In support of his contention that the statement was involuntary Johnson testified at the hearing that he was beaten by the investigating officers, that the statements contained in the confession were drafted by the police, and that he did not read the typed confession because he was, at the time, incapable of reading. The Commonwealth's witnesses contradicted each of these assertions. The hearing judge chose to resolve the conflicts in testimony in favor of the Commonwealth and, based on the chronology of events above-described, concluded that the confession was voluntary. We find no error in this conclusion.

■■ It is well-established that the voluntariness of a confession is to be determined in light of the totality of circumstances surrounding its elicitation.[5] In assessing the relevant factors, "it is the continuous interrogation which is the crucial element in rendering a confession involuntary." *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 151, 239 A.2d 426, 431 (1968). In the instant case, Johson was interrogated for a total of only forty-five minutes, and also underwent the voluntary two hour polygraph test, before confessing. These interrogations were separated by adequate rest periods. Johnson was twice allowed to go to the bathroom and adequately supplied with food. Given the judge's factual findings, the circumstances of this case do not approach those instances where we have held that the length of interrogation rendered the resultant confession involuntary.[6]

5. *See, e. g.,* among the legion of cases so holding, *Columbe v. Connecticut,* 367 U.S. 568, 601, 81 S.Ct. 1860, 6 L.Ed.2d 1037, 1057 (1961); *Commonwealth v. Tucker,* 461 Pa. 191, 335 A.2d 704 (1975); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 149, 239 A.2d 426, 430 (1968).

6. *Compare* those cases in which we have overturned findings of voluntariness because of the length of the interrogation involved: *Commonwealth v. Irvin,* 462 Pa. 395, 341 A.2d 132 (1975) (intermittent questioning for over nineteen consecutive hours); *Commonwealth v. Purvis,* 458 Pa. 359, 326 A.2d 369 (1974); (accused with an IQ of 72 interrogated over a twenty-five hour span by at

## II.

■ Having concluded that the suppression court did not err in admitting the confession, we now consider Johnson's contention that the additional evidence he presented at trial requires us to hold, as a matter of law, that Johnson's purported waiver of rights and subsequent confession were involuntary.[7] Because the fact finder's conclusion would be supportable if based on any reasonable reconstruction of the evidence, we can find error as a matter of law only if the evidence, when taken in a light most favorable to a finding of effective waiver and voluntariness, could not support such a conclusion. Having reviewed the evidence in this light, we have concluded that appellant's contention is without merit.

■ The only evidence introduced at trial on the issues of waiver and voluntariness which differed significantly from that which was presented at the suppression hearing was the testimony of one Lorraine McNally, an expert in educational testing employed by the Board of Education of Philadelphia. She testified that in tests administered to Johnson at the ages of eight and fourteen, Johnson tested as a "retarded educable" with an IQ in the 63–70 range. It was her opinion that Johnson was incapable of understanding sentences containing more than one concept and that he would, therefore, be incapable of

least five different police officers on eight different occasions); *Commonwealth v. Simms*, 455 Pa. 599, 317 A.2d 265 (1974) (accused with an IQ of 61 questioned intermittently for over twenty-two hours); *with* those cases in which a finding of voluntariness was upheld: *Commonwealth v. Walker*, 433 Pa. 124, 249 A.2d 283 (1969) (accused classified as retarded educable in custody for one and one-half hours); *Commonwealth ex rel. Joyner v. Brierley*, 429 Pa. 156, 239 A.2d 434 (1968) (accused with an IQ of 80 questioned for five hours over a ten hour period).

7. It should be noted that what is at issue here is not the "admissibility" of the confession, but rather its legal validity in light of evidence adduced at trial pursuant to Rule 323(j) of our Rules of Criminal Procedure. *See* note 2 *supra*.

comprehending several of the *Miranda* warnings.[8] It is now put to us that appellant's low level of intelligence as demonstrated by this testimony renders his purported waiver ineffective as a matter of law. We do not agree.

Our Court "[has] consistently refused to adopt a *per se* rule of inability to waive constitutional rights exclusively based on mental and physical deficiency. . . . Rather we have always adhered to a totality of the circumstances rule where we consider all factors surrounding the waiver to determine whether it was knowing and intelligent." *Commonwealth v. Scoggins,* 451 Pa. 472, 476, 304 A.2d 102, 105 (1973) (citations omitted).[9] Thus, while Johnson's low IQ was a weighty factor in assessing the totality of circumstances surrounding the purported waiver, the jury was certainly not compelled to reach a finding of ineffectiveness based on this factor alone.

 Nor do we find that the jury erred in failing to adopt Mrs. McNally's opinion that Johnson could not have comprehended the meaning of the constitutional warnings which were read to him. "The degree of credence to be given to opinion evidence of this sort is primarily within the discretion of the fact-finder, to whose judgment we will defer if there is support for it in the record. Commonwealth v. Embry, 441 Pa. 183, 272 A.2d 178 (1971). See also Commonwealth v. Johnson, 457 Pa. 554, 327 A.2d 632 (1974); Commonwealth v. Karchella, 449 Pa. 270, 273, 296 A.2d 732, 733 (1972)." *Commonwealth v. Tucker,* 461 Pa. 191, 335 A.2d 704, 707 (1975).

**8.** Specifically, Mrs. McNally testified that Johnson would not be able to comprehend the following questions when read to him without interruption:

(1) "You have a right to talk to a lawyer of your own choice before we ask you any questions and also to have a lawyer here with you while we ask you questions.

(2) "If you cannot afford to hire a lawyer and you want one, we will see that you have a lawyer provided to you free of charge before we ask you any questions."

**9.** *See* cases cited at note 3 *supra.*

Here the record amply supports the jury's conclusion. On cross-examination it was revealed that Mrs. McNally had never personally examined Johnson, that the most recent test upon which she relied was conducted more than four years prior to the incident in question, and that her opinion did not take account of Johnson's peer group contacts which could have supplied him with the insights necessary to understand the meanings of the warnings. The reliability of her opinion was further weakened when Mrs. McNally conceded that Johnson's present ability to formulate sentences with multiple concepts, as demonstrated in his testimony of the previous day, was quite at variance with her evaluation of Johnson's mental capacity. Finally, but no less significantly, in assessing the coherence of Johnson's testimony at trial the jury could reasonably have concluded that Johnson was intellectually and emotionally capable of responding intelligently to sustained interrogation.[10] Indeed, on cross-examination Johnson expressly stated that he understood the meaning of each of the warnings. Accordingly, the jury's conclusion that Johnson's waiver of his rights was an intelligent one was adequately supported by the record.

The same must be said of Johnson's confession. As in the case of waiver, we have consistently held that a confession is not rendered involuntary simply because of the low IQ of the defendant.[11] While the emo-

10. The observed ability of a defendant to respond intelligently to questioning while on the witness stand is certainly an important factor to be employed in assessing a defendant's claim of inability to respond intelligently to police questioning. See *Commonwealth v. Abrams*, 443 Pa. 295, 301, 278 A.2d 902 (1971); *Commonwealth v. Darden*, 441 Pa. 41, 271 A.2d 257 (1970).

11. *Commonwealth v. Tucker*, 461 Pa. 191, 335 A.2d 704 (1975); *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975); *Commonwealth v. Scoggins*, 451 Pa. 472, 304 A.2d 102 (1973); *Commonwealth v. Daniels*, 451 Pa. 163, 301 A.2d 841 (1973); *Commonwealth v. Abrams*, 443 Pa. 295, 278 A.2d 902 (1971); *Commonwealth v. Darden*, 441 Pa. 41, 271 A.2d 257 (1970); *Commonwealth v. Walker*, 433 Pa. 124, 249 A.2d 283 (1969); *Com-*

tional and intellectual immaturity of the defendant must of course be taken into account and given due weight in determining the voluntariness of the confession, that determination is still to be made in light of all of the circumstances surrounding it. Here the jury, properly charged, chose to conclude that the limited interrogation to which Johnson was subjected did not overbear his will and render his confession involuntary. In light of Johnson's seeming coherence in response to lengthly court room interrogation and in view of the circumstances surrounding the confession already discussed we cannot conclude that the jury erred in this determination.[12]

Judgment of sentence affirmed.

MANDERINO, J., filed a concurring opinion in which ROBERTS, J., joins.

NIX, J., concurs in the result.

monwealth ex rel. Joyner v. Brierley, 429 Pa. 156, 239 A.2d 434 (1968).

12. Appellant raises two additional allegations of error, but neither contention has been properly preserved for review. Appellant first contends that his statement was the product of an unnecessary delay between arrest and arraignment and hence was improperly admitted in evidence against him at trial. *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1973). Since this issue was not raised as an independent ground for relief until post-trial motions, it came too late for the confession could not then be excluded. See *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975); *Commonwealth v. Spriggs,* 463 Pa. 375, 344 A.2d 880, 883 (1975); *Commonwealth v. Newsome,* 462 Pa. 118, 337 A.2d 904, 906 (1975); *Commonwealth v. Segers,* 460 Pa. 149, 331 A.2d 462, 467 n. 3 (1975).

Appellant also assigns as error certain allegedly inflammatory remarks made by the district attorney on closing argument. No objection was taken to these remarks, however, either during or at the end of the district attorney's closing argument. Any assertion of the point thereafter may not properly be made on appeal. *Commonwealth v. Mennyweather,* 458 Pa. 12, 329 A.2d 493 (1974); Commonwealth v. Sampson, 454 Pa. 215, 220, 311 A.2d 624 (1973); *Commonwealth v. White,* 442 Pa. 461, 275 A.2d 75 (1971).

MANDERINO, Justice (concurring).

I join in the opinion of Mr. Justice Pomeroy except for certain implications arising from that opinion's references to polygraph examinations. References to the administration of a polygraph examination by the police in our opinions are necessary to give a complete picture of the chronology of events, but in no way indicate an approval of the use of polygraph examinations results for evidentiary purposes or for any other purpose.

The majority implies that because the appellant consented, the two hours spent taking the polygraph examination is to be excluded from consideration. A polygraph examination, however, is nothing more than additional *interrogation*: interrogation during which an examinee is connected to a machine. Interrogation is interrogation regardless of what it's called. A person's consent to being wired while interrogated is as irrelevant as a person's consent to being seated or consent to walk to a particular room for interrogation purposes.

Therefore, I cannot agree that the two hours of interrogation to which the appellant was subjected during the polygraph examination should be excluded from consideration when determining whether or not the confession was voluntarily uttered.

ROBERTS, J., joins in this concurring opinion.