385 A.2d 402

**COMMONWEALTH of Pennsylvania**

v.

**Robert Leland WHITE, Appellant.**

Superior Court of Pennsylvania.

Submitted March 14, 1977.

Decided April 13, 1978.

John H. Chronister, Public Defender, York, for appellant.

Richard H. Horn, Assistant District Attorney, and Donald L. Reihart, District Attorney, York, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Following a jury trial, appellant was found guilty of robbery.[1] Post-trial motions were refused and appellant was sentenced. An appeal was filed with this court, but the case was remanded so that the lower court could receive testimony, hear argument and determine whether the district attorney had failed to disclose an exculpatory statement in his possession, thereby violating appellant's constitutional rights and entitling him to a new trial. On May 28, 1976, the lower court, after considering this new ground, again denied the motion for a new trial. On July 15, 1976, this court allowed this appeal nunc pro tunc. For the reasons set forth herein, we affirm.

Viewing the evidence in the light most favorable to the verdict winner, the Commonwealth, *Commonwealth v. Dandar*, 249 Pa.Super. 327, 378 A.2d 319 (1977), the following was adduced at trial. On January 29, 1975, a York drug store was robbed at gun point. Appellant, along with the driver, remained in the escape car during the robbery. Appellant's participation in the robbery was established through testimony that appellant gave directions to the pharmacy, and recommended that the theft be carried out in the daytime rather than after store hours, as one of the others had suggested. In addition, when the robbers exited the store and got into the waiting car, they returned appellant's gun, used in the robbery. These men then went to appellant's apartment to divide the booty, however, no evi-

1. 18 Pa.C.S. § 3701.

dence was produced to show that appellant received any of the loot. Both appellant and his alibi witness testified that he did not leave his apartment the day of the robbery.

■ Appellant's first contention is that the Commonwealth failed to make exculpatory evidence available to him, thereby depriving him of a fair trial in accord with the dictates of due process. At trial, appellant's counsel indicated to Commonwealth counsel that he intended to call Deardorf, one of the men who entered the store, to corroborate appellant's testimony that he remained at home the day of the robbery. The prosecutor then said that he would cross-examine the witness using a statement in which Deardorf told police that appellant had been in the car. Defense counsel decided, therefore, not to call the witness.

At the hearing conducted after our remand to consider whether the Commonwealth had wrongfully withheld evidence, appellant's counsel testified that he saw the statement at trial.

"I looked at the statement and in fact it did say that. I talked to Deardorf and Deardorf said, 'If you call me to the stand by [sic] testimony will be that White was in fact there.' I, therefore, did not call Mr. Deardorf as a witness because his testimony would have been contrary to that of Mr. White and in my opinion would have been harmful to him, therefore, I did not call him.

At a later time, in reviewing the entire statement made by Mr. Deardorf, it came to my attention that while the statement placed Mr. White at the scene it went on to say that Mr. White was not involved in the matter, that he had not helped to plan it or gotten any of the money. He had not gotten anything other than merely being present. . . ." (*Brady* Hearing 15–16)

Appellant cites *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for the proposition that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.*

at 87, 83 S.Ct. at 1197. We certainly do not take issue with the validity of this proposition. We have difficulty, however, in comprehending appellant's argument that in this case the lower court sanctioned a violation of the *Brady* holding.

In judging the merit of appellant's *Brady* contention, we are guided by three considerations articulated by the United States Supreme Court in *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). Those considerations are: (a) was there suppression by the prosecution after a request by the defense? (b) would the evidence be favorable to the defense? (c) was the evidence material?

Turning to the first consideration, we find that there was no suppression by the Commonwealth. We note that at no time did the appellant make a specific request for Deardorf's statement. In *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976), however, the supreme court said:

> "[E]ven absent such a specific request, a prosecutor has the duty to make available to the defense evidence that is truly exculpatory, rather than merely favorable." *Id.,* 467 Pa. at 131, 354 A.2d at 878 (footnote omitted).

Here, appellant made no specific request, yet the prosecutor made the statement available. At the hearing to determine the validity of appellant's *Brady* argument, appellant's counsel admitted that during trial the prosecuting attorney showed him Deardorf's statement. Counsel testified that later, "in reviewing the entire statement," he discovered the allegedly exculpatory portion of it. It is unfortunate that counsel failed to read the statement in its entirety when it was first presented to him. Under the circumstances, however, it is impossible to say that the prosecutor's office suppressed the statement. We note, in addition, that Detective Wolfhope, who was involved in the robbery investigation and took Deardorf's statement, testified at the hearing that:

> "A. At the [preliminary] hearing I had the statement there and I know there was, I believe, three attorneys for the four Defendants at that time, and I know several of them looked at all the statements I had.

Q. In other words, at the preliminary hearing you made this statement available to the various Defense Counsel?

A. That's correct."

(*Brady* Hearing 6)

Wolfhope testified that appellant was at the preliminary hearing with counsel, an assertion which was not contradicted by appellant. It is thus abundantly clear that the Commonwealth did not suppress Deardorf's statement.[2]

Turning to the second consideration, it is obvious that the statement was not favorable to appellant in any event. The statement places appellant at the scene of the robbery, contrary to his alibi testimony. The theory of the prosecution was that White participated in the robbery as an accomplice. His knowing presence in the car would do nothing to refute the assertion that White was an accomplice, but would simply corroborate Myer's testimony that White was indeed present.

Appellant's counsel was asked at the *Brady* hearing what he would have done with the evidence had it been available to him. Counsel indicated that it may have refreshed appellant's memory as to his whereabouts. He continued:

"I think a stronger possibility is that I would have advised Mr. White not to testify at all. Simply to rely on the testimony which he could receive from ·Mr. Deardorf's testimony given immediately after this happened, to be more believable to sound more accurate than the latter testimony which would have indicated Mr. White wasn't there at all. I would have felt much better relying on the testimony given without coersion [sic] given to the police, immediately after it happened, I would have given more credence to that." (*Brady* Hearing 21)

2. Defense counsel asserted at the hearing on nondisclosure that the statement, although ultimately available to appellant, was not timely made available to him. This contention is adequately refuted by the fact that the statement was available to appellant at the preliminary hearing.

The fact that appellant may have selected a different trial strategy had the information come to his attention earlier is irrelevant. The prosecution is not responsible for alerting the defense to every tidbit of information gleaned in its investigation so that a defendant can devise what he considers the ultimate trial strategy.

"Absent a constitutional requirement that the evidence be made available to the appellant we hold that the matter was one for the exercise of judicial discretion." *Commonwealth v. Doberstein*, 223 Pa.Super. 554, 557, 302 A.2d 513, 515 (1973). We find no abuse of discretion in the lower court's decision that appellant was not deprived of a fair trial due to the prosecution's alleged withholding of favorable evidence.

■ Appellant's second contention is that the lower court erred in refusing to grant appellant a new trial on the basis that the Commonwealth committed prejudicial error by referring to appellant as the crime's "mastermind" in its closing argument. Appellant insists that there was no factual basis for the statement.

"[T]he District Attorney must limit his statements to the facts in evidence and legitimate inferences therefrom." *Commonwealth v. Revty*, 448 Pa. 512, 516, 295 A.2d 300, 302 (1972). *See also Commonwealth v. White*, 442 Pa. 461, 275 A.2d 75 (1971); *Commonwealth v. Dickerson*, 406 Pa. 102, 176 A.2d 421 (1962); *Commonwealth v. Crittenton*, 326 Pa. 25, 191 A. 358 (1937). In the instant case, we find that the prosecuting attorney complied with this mandate.

Mr. Myers, the driver of the escape car, testified that appellant directed him to the drug store and told him where to park and where to move his car. He also testified that appellant's gun, used in the robbery, was returned to him immediately after the robbery. There was testimony that appellant recommended that the robbery be carried out during the day and testimony that the band returned to his apartment to divide the loot. It is certainly reasonable to infer that appellant played a major role in directing the robbery. We therefore find no impropriety in the prosecu-

tor's closing and no error in the lower court's refusal to grant a new trial.

Judgment of sentence affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.