## Commonwealth v. Ramos

*Richard A. Hernan, district attorney,* for the commonwealth.

*Joseph A. Massa,* for defendant.

WOLFE, *J.,* October 31, 1986 — Defendant was arrested on charges of involuntary deviate sexual intercourse, statutory rape and indecent assault upon an eight-year-old boy.

Defendant filed a petition for suppression of admissions to a caseworker employed by the commonwealth of Pennsylvania, Department of Welfare, Children and Youth Services, given while he was in custody at the Warren County Prison following his arrest.

It is the commonwealth's position the admissions should not be suppressed because there was no duty of the caseworker to "Mirandize" defendant. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694 (1966).

Defendant was initially arrested at Shippenville, Pa., and transported to the Clarion County Jail. On June 23, 1986, a Pennsylvania State Police Officer, after first giving defendant his Miranda warnings, served him with a criminal complaint. Defendant, according to the officer's testimony at the suppression hearing, basically remained silent and only answered the administrative questions put to him and made no admissions as to the alleged crimes. Thereafter defendant was transported to a district justice who again rendered defendant his Miranda rights, and in failure to post sufficient bail defendant was incarcerated at the Warren County Prison. Defendant again was taken before a district justice in War-

ren County because the alleged crime occurred in this jurisdiction, and defendant again was Mirandized on June 28, 1986. The officer stated at that time defendant requested counsel. Defendant also filed an oral complaint with the officer concerning the confiscation of his van which he was operating at the time of his arrest and by reason of this complaint the same officer again interviewed defendant on June 28, 1986, at the Warren County Prison and again Mirandized defendant concerning the entire incident.

The proferred witness, John Bowler, caseworker, interviewed defendant on June 26, 1986, at the Warren County Prison under the mandatory provisions of the act of Nov. 26, 1975 P.L. 438, (11 P.S. §2201) cited as the "Child Protective Services Law." Mr. Bowler testified he interviewed defendant under the auspices of the act and the interview took place in a locked room where the two were alone. The witness stated he explained to defendant the difference between a criminal investigation and a civil investigation and advised defendant the police could acquire a copy of his report. The witness denied defendant requested counsel.

Defendant testified and stated Mr. Bowler introduced himself by giving him his card and told him the interview would be private and denied he was told any statements he made would be given to the police. Defendant acknowledged his prior receipt of Miranda rights by the arresting officer and the subsequent judicial proceedings through the district justice court.

Section 22154 of the Child Protective Service Laws mandates that reports of investigations of child abuse be confidential with certain exceptions, and specifically as applicable to the instant case, the report shall be available to:

"(10) Law enforcement officials who shall receive reports of abuse in which the initial review gives evidence that the abuse is homicide, sexual abuse or exploitation, or serious bodily injury perpetrated by persons whether related or not related to the victim, or child abuse perpetrated by persons who are not family members. Reports referred to law enforcement officials shall be on such forms provided by and according to regulations promoted by the department. For purposes of Section 15 'Serious Bodily Injury' means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ."

We frame the issue. Does the foregoing act which mandates a caseworker to file a report with law enforcement officials, indeed on forms provided by and according to regulations promoted by the Department of Welfare, of confessions of criminal activity for which defendant is in custodial arrest require the caseworker to give defendant Miranda warnings?

Our research finds no cases addressing this narrow issue in light of the statute; however, our research finds *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136 (1984) which points the way, although not directly resolving the issue.

In *Murphy,* supra, defendant was initially questioned by the Minneapolis police concerning the rape and murder of a teenage girl in 1974. Thereafter, in 1980, he was placed on probation for an unrelated crime and required to undergo a treatment program for sexual offenders. During the course of his treatment at Alpha House a counselor informed his probation officer of defendant's admission to the rape and murder in 1974. On a motion to

suppress, the Minnesota court granted and U.S. Supreme Court reversed. The essence of the reversal was defendant was not in custodial interrogation and voluntarily revealed incriminating information instead of asserting his Fifth Amendment privileges, and his disclosures were not compelled in that he voluntarily informed his probation officer of his past criminal acts in a noncustodial setting. The high court discussed at length the numerous cases touching upon incriminating statements given to private as well as governmental citizens and rejected all arguments where there is a noncustodial interrogation the duty rests with defendant to assert his right to remain silent, holding:

"The Fifth Amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the amendment." *U.S. v. Monia,* 317 U.S. 424, 427, 63 S.Ct. 409, 87 L.Ed. 376 (1943).

In admonishing the states of the difference between a custodial and a noncustodial interrogation, the court said:

"Even a cursory comparison of custodial interrogation and probation interviews reveals the inaptness of the Minnesota Supreme Court's analogy to *Miranda.* Custodial arrest is said to convey to the suspect a message that he has no choice but submit to the officer's will and to confess. *Miranda v. Arizona,* 384 U.S. at 456-457, 86 S.Ct. at 1618-1619. It is unlikely that a probation interview, arranged by appointment at a mutually convenient time, would give rise to a similar impression. Moreover, custodial arrest thrusts an individual into an unfamiliar atmosphere or an interrogation environment . . . cre-

ated for no purpose other than to subjugate the individual to the will of his examiner."

Instantly, it should be evident to the most casual that defendant would not give a voluntary incriminating statement to the caseworker had he not been assured his communication would be private and for the purpose of assisting him with his sexual aberrations.

We can imagine no communication procedure that would be more effective in eliciting and obtaining confessions from one in custody than that structured by the Child Protective Service Act. It is tailor made, if permitted to operate unbridled, to guarantee convictions. To argue the interviewer had no duty to fully render the Miranda warnings is to ignore the reality the act compels the commonwealth agent to be an arm of law enforcement. In short, the caseworker was not in the role of a private citizen but was compelled to interview defendant knowing any inculpatory statements would be delivered to the police.

Resolving the credibility between the caseworker's testimony he advised defendant's right to counsel and defendant's denial thereof, we hold it makes little, if any, difference because the record is clear even by the proffered witness' testimony he did not fully Mirandize defendant and we do not accept the commonwealth's position defendant would have given a full confession unless he was assured his statements would be held confidential in light of his refusal to give any statements on four prior occasions during police handling of him.

Nor do we accept the commonwealth's argument because of the prior warnings given by the Pennsylvania state police and the district justice, subsequent warnings need not be administered. *Commonwealth v. Dennis,* 451 Pa. 340, 304 A.2d 111

(1973); *Commonwealth v. Abrams,* 443 Pa. 295, 278 A.2d 902 (1971) hold it is a question of fact whether or not prior warnings had become stale and repeated warnings therefore are necessary on subsequent interrogation. Factors to be considered are the lapse of time between the warnings and the interrogation, whether the interrogation occurred at the same location as the earlier warnings, whether the same officer gave the warnings and whether statements immediately preceded by warnings differed from statements elicited during the complained-of interrogation.

Defendant clearly was confronted with a friendly caseworker who initiated the meeting under the guise of assisting him, and we therefore reject the commonwealth's argument he was acting in the course of good faith in the role of a strictly civil agent.

Finally, we reject the commonwealth's position, "the societal right to have the truth revealed is paramount and requires that the evidence not be suppressed." To accept this position is to reject *Miranda,* supra.

For the foregoing reasons we enter the following

## ORDER

And now, this October 31, 1986, defendant's petition to suppress his statements to John Bowler on June 26, 1986, while incarcerated at Warren County Prison is granted.